UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

AMERICAN HONDA MOTOR CO., INC., a
foreign corporation,

               Plaintiff,

-vs-                                                            Case No. 5:04-cv-12-Oc-10GRJ

MOTORCYCLE INFORMATION
NETWORK, INC., a Florida corporation,
GREGORY S. SCHWEIGHART,

               Defendants.
_____

## **O R D E R**

This action arises out of a business relationship between Plaintiff American Honda Motor Company, Inc. and Defendant Motorcycle Information Network, Inc. The Plaintiff's complaint sought declaratory relief (Doc. 1); however, the gravamen of the case is the Defendants' amended counterclaim (Doc. 50). Essentially, the Defendants claim that the Plaintiff induced them with promises of confidentiality and future business dealings to divulge confidential information about a telematic system for motorcycles and then misappropriated that information to develop its own similar system. Before the Court is the Plaintiff's motion for dismissal of most of the claims in the amended counterclaim (Doc. 51). The Plaintiff does not dispute that the Defendants have properly stated a claim under Florida's Uniform Trade Secrets Act, §§ 688.001, *et seq.* ("FUTSA"). However, it argues that the remaining claims (deceptive and unfair trade practices, breach of oral confidentiality agreement, breach of contract implied in law/quasi contract, fraud, negligent

misrepresentation, and constructive fraud) should be dismissed as preempted by FUTSA or because the Defendants have otherwise failed to state a claim. For the reasons that follow, the motion will be granted in part and denied in part. The Court concludes that the FUSTA preemption argument is unavailing but that the breach of contract implied in law (quasi contract) and the constructive fraud counts (counts four and seven) should be dismissed for failure to state a claim.

## Background and Facts

The Plaintiff is American Honda Motor Company, Inc. ("Honda"), a California corporation and global manufacturer and seller of motorcycles, automobiles, and other motorized vehicles. The Defendants are Motorcycle Information Network Inc. ("MIN"), a Florida corporation, and its principal, Gregory S. Schweighart, a resident of Florida.[1]

Sometime prior to October of 2000, MIN, through its agents and employees, conceived of the idea for a novel telematic system for motorcycle riders. The term "telematics" refers to the combination of telecommunications and computing or data communications between systems and devices.[2] In its telematic system, MIN envisioned an onboard computer system consisting of embedded hardware and software which would allow motorcycle riders to access telecommunication and navigation services, as well as

---

[1] Jurisdiction is based on diversity of citizenship and amount in controversy. 28 U.S.C. § 1332.

[2] See, e.g., Free On-Line Dictionary of Computing, *available at* www.foldoc.org.

other information services and features, via the Internet from their vehicles.[3] MIN considered the system as envisioned to be more advanced than any telematics system then available or under development, and took steps to keep its ideas confidential when prospecting for potential investors and business partners. MIN never went further in developing the system than creating "a paper, or hard copy, version."[4]

During October of 2000, Mr. Schweighart, as principal of MIN, met with Honda agents at several motorcycle-related public events. At these meetings, Schweighart gave the agents a very general description of the system, without divulging any confidential information, in order to see if Honda was interested in either developing the system under

---

[3] Paragraph 10 of the amended counterclaim (Doc. 50) contains the following description of the telematic system:

> At all times material hereto, MIN, through its employees, and agents conceived of and developed the idea of combining existing or developing technology, including vehicle-network telecommunication system, and a stand-alone vehicle navigational software system ("VNSS"); Global Positioning System ("GPS") technology; voice and data communications and incorporated location-based information services ("LBS"); a database of meta-tagged points of interest ("POI") containing over 14 million businesses, and various categories of information and databases programable to the lifestyle specific to each user of the VNSS; a customer relation resource management system ("CRM") consisting of websites including personal web pages for individual users, customized and based upon a personalized database of users which included user interests, vehicle type, and other personalized information spanning multiple markets, each of which could be employed independently of the other, but, most importantly, did not require the use or necessity of a command center, into a novel telematic system for motorcycle riders . . . which did not exist heretofore in the marketplace in that combination or arrangement of elements.

[errors in original]

[4] See Doc. 50, at ¶ 18.

the Honda brand or providing funding for MIN to pursue development. Schweighart told Honda that he could not discuss the specific details of the system unless Honda entered into a confidentiality agreement. The agents told Schweighart that they were not authorized to execute a confidentiality agreement on behalf of Honda, but led Schweighart to believe that such an agreement was merely a formality and that MIN's trade secrets would nevertheless be held in confidence by the agents. Schweighart was told by Honda that if he continued to demand "trivial" things such as signed confidentiality agreements, then Honda "might just close the doors that had graciously been opened for MIN concerning this opportunity."[5] In reliance on these representations, Schweighart disclosed to Honda's agent confidential information relating to the telematic system. Thereafter, Honda represented that it was interested in developing the system under its name or by funding MIN, and that MIN should forgo entering into any agreements with other businesses to market or sell the system.

Between October of 2000 and October of 2001, Schweighart and agents of Honda corresponded by email and telephone. Over the course of this one-year period, Schweighart revealed to Honda further details and technical information about how the proposed system would operate. During this time, Honda continued to refuse to formalize its relationship with MIN in a written agreement. MIN nevertheless abstained from seeking funding or sponsorship from any individual or other entity and did not attempt to market or sell the paper version of the system. In October of 2001, after obtaining the confidential

---

[5] Doc. 50, at ¶ 31.

details of the system, Honda told Schweighart that it was not interested in going forward with a business relationship with MIN on any terms and ceased all communication with MIN. Sometime thereafter, Honda began to market and sell in its motorcycles an embedded telematics system substantially similar to the system first conceptualized by MIN.

On December 15, 2003, Mr. Schweighart wrote to Honda demanding relief and enclosed a draft complaint alleging, *inter alia*, theft of trade secrets and breach of agreement.[6] This prompted Honda to file suit in this Court, seeking a declaration that Honda's system does not infringe any intellectual property rights held by the Defendants. The Defendants answered and filed a counterclaim (Doc. 19), which was subsequently amended (Doc. 50). The amended counterclaim is framed in seven counts: (1) theft of trade secrets, in violation of Florida's Uniform Trade Secrets Act, §§ 688.001, *et seq.* ("FUTSA"); (2) deceptive and unfair trade practices, in violation of Florida's Deceptive and Unfair Trade Practices Act, §§ 501.201, *et seq.* ("FDUTPA"); (3) breach of oral confidentiality agreement; (4) breach of contract implied in law/quasi contract; (5) fraud; (6) negligent misrepresentation; and (7) constructive fraud. The Plaintiff moves to dismiss counts two through seven as preempted by FUTSA or for otherwise failing to state a claim upon which relief may be granted.

**Motion to Dismiss Standard**

---

[6] Doc. 11, exh. A.

Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from the facts in the light most favorable to the plaintiff.[7] In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate."[8]  As the Supreme Court declared in Conley v. Gibson, a complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[9]  Thus, if a complaint "shows that the Plaintiff is entitled to any relief that the Court can grant, regardless of whether it asks for the proper relief," it is sufficiently plead.[10] "[T]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low."[11] Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."[12] Liberal notice pleading standards embodied in Rule 8(a) "do not require that a plaintiff specifically plead

---

[7] See, e.g., Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

[8] Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968).

[9] Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  See also Cook & Nichol, Inc. v. Plimsoll Club, 451 F.2d 505 (5th Cir. 1971).

[10] Dotschay v. Nat. Mut. Ins. Co., 246 F.2d 221 (5th Cir. 1957).

[11] Quality Foods de Centro Am. S.A. v. Latin Am. Agribusiness Develop. Corp., 711 F.2d 989, 995 (11th Cir. 1983).

[12] Fed. R. Civ. P. 8(a)(2).

6

every element of a cause of action"[13] or set out in precise detail the specific facts upon which he bases his claim.[14] The complaint must only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."[15] However, to survive a motion to dismiss, a plaintiff must do more than merely "label" his claims.[16] "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal [for failure to state a claim]."[17]

## Discussion

The Plaintiff moves to dismiss counts two through seven as preempted by FUTSA. The Plaintiff also moves to dismiss counts two, three, four, and seven for otherwise failing to state a claim upon which relief may be granted. Each argument will be considered in turn. For the sake of expediency, the Court will consider the preemption issue last.[18]

---

[13] Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001).

[14] Conley, 355 U.S. at 47.

[15] Roe, 253 F.3d at 683 (quoting *In re* Plywood Antitrust Litig., 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)).

[16] Blumel v. Mylander, 919 F. Supp. 423, 425 (M.D. Fla. 1996).

[17] Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003); Day v. Taylor, - - F.3d - - , No. 04-10031, 04-10671, 2005 WL 407410, at *4 (11th Cir. Feb. 22, 2005).

[18] The Plaintiff also argues that the Defendants voluntarily abandoned counts two through seven during the course of a hearing before the Magistrate Judge on the Plaintiff's motion for discovery sanctions. According to the Plaintiff, the Defendants represented to the Court that this case involved only the use or misuse of trade secrets and was not predicated on any other theory of liability. In support of this contention, the Plaintiff quotes the Magistrate Judge's order (Doc. 45),
(continued...)

### *A. Whether the Defendants Lack Statutory Standing to Sue Under FDUTPA*

Count two of the Defendants' amended counterclaim is predicated on alleged violations of Florida's Deceptive and Unfair Trade Practices Act, §§ 501.201, *et seq.* ("FDUTPA"). The Plaintiff moves to dismiss this claim, arguing that the Defendants lack standing under the statute because they are not "consumers" of Honda and because the applicable version of the statute only permits "consumers" to sue.

Prior to its amendment, § 501.211(2) of FDUTPA provided:

> In any individual action brought by a *consumer* who has suffered a loss as a result of a violation of this part, such *consumer* may recover actual damages, plus attorney's fees and court costs as provided in s 501.2105. . . .[19]

Section 501.211(2) was amended effective July 1, 2001, and the class of potential claimants was broadened by the substitution of the word "person" for "consumer." The statute now reads:

> In any action brought by a *person* who has suffered a loss as a result of a violation of this part, such *person* may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105.[20]

---

[18](...continued)
in which the Court stated: "Defendants characterized this case as one only involving the use or misuse of trade secrets." It is unmistakably clear from the transcript of the hearing (Doc. 57) that the Defendants did not abandon their non-trade secret claims and that the Magistrate Judge was referring to the Defendants' representation that the case did not involve patent, trademark, or copyright infringement.

[19] § 501.211(2), Fla. Stat. (2000) (emphasis added).

[20] § 501.211(2), Fla. Stat. (2003) (emphasis added). See also Niles Audio Corp. v. OEM Sys. Co., 174 F. Supp. 2d 1315, 1319-20 (S.D. Fla. 2001) (considering the effect of the amendment).

The Plaintiff contends that the pre-amendment version of the statute controls because the 2001 amendment is not retroactive in effect[21] and because the Defendants' FDUTPA claim depends on alleged acts and representations made prior to the effective date of the amendment, July 1, 2001. According to the Plaintiff, since the pre-amendment version of the statute governs, the Defendants may only pursue a FDUTPA claim if they were "consumers" of Honda at the time of the alleged deceptive and unfair acts. Dismissal is warranted, says the Plaintiff, because the Defendants have not alleged that they purchased anything from Honda and, therefore, have not alleged that they are "consumers" entitled to pursue this claim.[22]

The Plaintiff's motion will be denied because this basis for dismissal does not appear on the face of the amended counterclaim. The Defendants have not alleged that *all* of Honda's deceptive and unfair acts occurred prior to July 1, 2001, the effective date of the amendment, such that the pre-amendment statute would control the entire claim. While some, if not most, of the acts forming the basis of the FDUTPA claim are alleged to have occurred in October of 2000,[23] the Defendants also allege that their interaction with Honda

---

[21] Guyana Tel. & Tel. Co., Ltd. v. Melbourne Intern. Comm., Ltd., 329 F. 3d 1241, 1247 (11th Cir. 2003) (concluding that the 2001 amendment to § 501.211(2) was not intended to be retroactive).

[22] Id. at 1246-47 (affirming district court's dismissal of claims under 1993 version of FDUTPA on basis that plaintiffs were producers or suppliers rather than consumers and citing Warren Tech. Inc. v. Hines Interests L.P., 733 So. 2d 1146 (Fla. 3d DCA 1999) and N.G.L. Travel Assoc. v. Celebrity Cruises, Inc., 764 So. 2d 672 (Fla. 3d DCA 2000)).

[23] The Defendants allege that in October of 2000 Honda agents orally agreed to keep MIN's information confidential, see Doc. 50, at ¶¶ 21, 26, 27, and represented that Honda was interested in a business relationship with MIN, see Doc. 50, at ¶¶ 29, 30, 31, simply to extract more
(continued...)

spanned a one-year period ending in October of 2001, months after the amendment became effective.[24] Therefore, it is not beyond doubt that the Defendants can prove no set of facts in support of their claim that would entitle them to relief.[25]

### B. Whether the Statute of Frauds Bars the Breach of Oral Agreement Claim

Count three of the amended counterclaim, given a reasonable interpretation, alleges that the Plaintiff breached its oral agreement with the Defendants, the terms of which were that the Plaintiff promised to keep the information concerning MIN's telematic system confidential, not to use the information without MIN's consent, and to enter into a joint venture or other business relationship with MIN.[26]

The Plaintiff moves to dismiss this claim on the ground that it is barred by the statute of frauds applicable to contracts not intended to be performed within one year. Section 725.01, Florida Statutes, provides in pertinent part:

> No action shall be brought . . . upon any agreement that is not to be performed within the space of 1 year from the making thereof . . . unless the agreement . . . upon which such action shall be

---

[23](...continued)
information about the telematic system.

[24] Doc. 50, at ¶¶ 32 & 33.

[25] Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

[26] Paragraph 78 of the amended counterclaim (Doc. 50) reads:

> At all time material hereto, HONDA, through its agents, orally agreed to keep the information, ideas, or concepts of MIN's System, whether they rise to the level of a trade secrets [sic] or simply confidential information, confidential, and would not disclose or use that information, ideas, concepts and confidential information embodied in MIN's SYSTEM without the consummation of a joint venture or other business relationship with MIN, or otherwise without the consent of MIN or SCHWEIGHART.

10

>brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith. . . .

The statute of frauds is an affirmative defense, which may be raised on a motion to dismiss for failure to state a claim, but only if the defense is apparent on the face of the complaint.[27]

Under Florida law, "[t]he primary factor to be utilized in determining whether or not an oral contract is to be performed within the one year limitation of the statute is, of course, the intent of the parties."[28] The intent of the parties is a factual matter that cannot be resolved on a motion to dismiss. Therefore, while an oral agreement to keep information confidential and not to use information without the consent of the confiding party appears to contemplate an agreement of indefinite duration, likely not intended to be performed within one year, the Court concludes that such an observation cannot support dismissal at this stage, absent factual confirmation. Similarly, while it is established under Florida law that "[a]n oral agreement to enter into a new business which will continue indefinitely has been held to be within the purview of the [statute of frauds],"[29] the Plaintiff has not cited binding authority (and the Court has found none) suggesting that dismissal of a claim for breach of an oral agreement to enter into a business relationship is appropriate at the

---

[27] See Fed. R. Civ. P. 8(c); Brennan v. City of Minneola, Fla., 723 F. Supp. 1442, 1443 (M.D. Fla. 1989) (Melton, J.).

[28] First Realty Inv. Corp. v. Gallaher, 345 So. 2d 1088, 1089 (Fla. 3d DCA 1977). See also, Khawly v. Reboul, 488 So. 2d 856, 858 (Fla. 3d DCA 1986); Bross v. Wallace, 600 So. 2d 1198, 1199 (Fla. 5th DCA 1992); Venditti-Siravo, Inc. v. City of Hollywood, Fla., 418 So. 2d 1251, 1253 (Fla. 4th DCA 1982).

[29] Weinsier v. Soffer, 358 So. 2d 61, 63 (Fla. 3d DCA 1978). See also, Khawly, 488 So. 2d at 858; Bross, 600 So. 2d at 1199.

pleading stage.[30] Consequently, the statute of frauds defense is not apparent on the face of the allegations supporting the claim for breach of oral agreement and does not mandate dismissal at this juncture.

### *C. Whether the Breach of Contract Implied in Law/Quasi Contract Should be Dismissed for Failure to Allege Lack of Adequate Remedy at Law*

In count four of the amended counterclaim, designated as an "alternative" to count three, the Defendants attempt to assert a claim for breach of contract implied in law (quasi contract). They contend that a contract with the Plaintiff should be implied in law under a quasi contract theory because the Defendants conferred benefits on the Plaintiff, namely, valuable confidential information and its abstaining from pursuing other business relationships with the Plaintiff's competitors. The Defendants demand damages in the amount the Plaintiff has been unjustly enriched.

Under Florida law, damages under the common law claim for breach of contract implied in law, also known as quasi contract or quantum meruit, are awarded on a theory of unjust enrichment.[31] As the court in Commerce Partnership 8098 L.P. v. Equity Contracting Co.[32] explained:

> A contract implied in law, or quasi contract, is not based upon the finding, by a process of implication from the facts, of an agreement between the parties. A contract implied in law is a legal fiction, an obligation created by the law without regard to

---

[30] See, e.g., Weinsier, 358 So. 2d at 63 (judgment after bench trial against party seeking to enforce oral agreement to share losses in a going business); Khawly, 488 So. 2d 856 (directed verdict); Bross, 600 So. 2d 1198 (judgment on the pleadings inappropriately based on statute of frauds).

[31] Magwood v. Tate, 835 So. 2d 1241, 1243 (Fla. 4th DCA 2003).

[32] 695 So. 2d 383 (Fla. 4th DCA 1997).

>  the parties' expression of assent by their words or conduct. The fiction was adopted to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving compensation.[33]

It is well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy.[34] Thus, to properly state a claim for unjust enrichment, a party must allege that no adequate legal remedy exists.[35] In this case, the amended counterclaim does not suggest that an adequate legal remedy is unavailable to the Defendants. The Defendants' quasi contract claim is predicated on the same set of allegations supporting their claims under FUTSA and FDUTPA. Accordingly, because an adequate remedy exists at law, the Defendants have not stated a claim upon which relief may be granted for breach of contract implied in law (quasi contract, quantum meruit, or unjust enrichment).

***D. Whether the Constructive Fraud Claim Should be Dismissed for Failure to Sufficiently Allege a Confidential or Fiduciary Relationship***

Count seven of the amended counterclaim is labeled a claim for constructive fraud.[36] The substance of this claim is set forth in conclusory fashion, in only three short sentences. The Defendants allege that the Plaintiff "engaged in deceptive and unfair acts" and "abused

---

[33] Id. at 386.

[34] See, e.g., Martinez v. Weyerhaeuser Mort. Co., 959 F. Supp. 1511, 1518 (S.D. Fla. 1996); Bowleg v. Bowe, 502 So. 2d 71, 72 (Fla. 3d DCA 1987) ("[T]he theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy . . . .").

[35] Martinez, 959 F. Supp. at 1518.

[36] No such claim of this nature was alleged in the Defendants' initial counterclaim. Doc. 19.

and took advantage of its confidential and fiduciary relationship with MIN by wrongfully exercising its unequal bargaining power and influence over MIN in order to derive various commercial benefits and advantages. . . ."[37] These conclusory allegations are insufficient to properly allege the existence of a confidential or fiduciary relationship, and as such, fail to state a claim for constructive fraud.

"Constructive fraud is simply a term applied to a great variety of transactions which equity regards as wrongful, to which it attributes the same or similar effects as those which follow from actual fraud, and for which it gives the same or similar relief as that granted in cases of real fraud."[38] Under Florida law, constructive fraud occurs "when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken."[39] "The term ' fiduciary or confidential relation' is a very broad one."[40] A fiduciary or confidential relationship exists where "confidence is reposed by one party and a trust is accepted by the other, or where confidence has been acquired and abused."[41] To state a claim for breach of a fiduciary or confidential relationship, "a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party."[42] Constructive fraud will

---

[37] Doc. 50, at ¶¶ 101 & 102.

[38] Douglas v. Ogle, 85 So. 243, 244 (Fla. 1920).

[39] See, e.g., Levy v. Levy, 862 So. 2d 48, 53 (Fla. 3d DCA 2003).

[40] Quinn v. Phipps,113 So. 419, 420 (Fla. 1927).

[41] Doe v. Evans, 814 So. 2d 370, 374 (Fla. 2002).

[42] Watkins v. NCNB Nat. Bank of Fla., N.A., 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993) (quoting Bankest Imports, Inc. v. ISCA Corp., 717 F. Supp. 1537, 1541 (S.D. Fla. 1989)).

not lie where the parties are dealing at arms length because there is no duty imposed on either party to protect or benefit the other.[43] The fact that one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party.[44]

The Defendants have not alleged that an express fiduciary or confidential relationship existed between the parties, nor have the Defendants alleged any facts upon which a fiduciary or confidential relationship may be implied in law. With respect to the nature of the relationship between the parties, the Defendants have merely alleged that an oral confidentiality agreement existed. There are no allegations of dependency on the part of the Defendants and no allegations of the Plaintiff's recognition, acceptance or undertaking of the duty to advise, counsel, protect, or benefit the Defendant. Without such averments, no fiduciary or confidential relationship is alleged. The Defendants constructive fraud claim is premised on nothing more than an arms-length business relationship. Allegations that an oral non-disclosure agreement existed between the parties is not sufficient, without more, to create a confidential or fiduciary relationship.[45] Moreover, the simple fact that the Plaintiff stands in a position of greater bargaining power by virtue of its global economic status is also not sufficient by itself to impose a fiduciary obligation on the

---

[43] See, e.g., Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp., 850 So. 2d 536, 541 (Fla. 5th DCA 2003); Maxwell v. First United Bank, 782 So. 2d 931, 934 (Fla. 4th DCA 2001).

[44] Lanz v. Resolution Trust Corp., 764 F. Supp. 176, 179 (S.D. Fla. 1991); Harris v. Zeuch, 137 So. 135 (Fla. 1931).

[45] Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1117 (11th Cir. 1996) (applying similar New York law).

Plaintiff.[46] Conclusory allegations that a confidential or fiduciary relationship existed, without any supporting factual assertions, are insufficient.[47] Accordingly, the Defendants have not stated a claim for constructive fraud, but have merely labeled one.

### E. Preemption Under Florida's Uniform Trade Secrets Act

Having resolved that the Defendants' claims of breach of contract implied in law (quasi contract) and constructive fraud must be dismissed, the Court will consider whether the remaining claims are preempted by operation Florida's Uniform Trade Secrets Act, §§ 688.001, *et seq.* ("FUTSA"). The Court concludes that the claims are not preempted.

Section 688.004 of FUTSA states that a complainant may recover damages for the misappropriation of its trade secrets. Section 688.008 of the Act provides that the FUTSA "displace[s] conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret." The Act specifies that this preemption does not apply to "contractual remedies, whether or not based upon misappropriation of a trade secret" or "other civil remedies that are not based upon misappropriation of a trade secret."[48] Thus, FUTSA preempts all claims, other than claims *ex contractu*, based on misappropriation of trade secrets.[49]

---

[46] See Cripe v. Atlantic First Nat. Bank of Daytona Beach, 422 So. 2d 820, 823 (Fla. 1982).

[47] Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003) ("[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal [for failure to state a claim].").

[48] § 688.008(2)(a) & (b), Fla. Stat.

[49] Allegiance Healthcare Corp. v. Coleman, 232 F. Supp. 2d 1329, 1335 (S.D. Fla. 2002) (Moreno, J.).

In Allegiance Healthcare Corporation v. Coleman,[50] the District Court for the Southern District of Florida considered FUTSA's preemptive effect on a claim for unfair competition that had been asserted in conjunction with a claim under FUTSA. The court concluded that whether FUTSA preempted the unfair competition claim depended on "whether allegations of trade secret misappropriation alone comprise the underlying wrong. . . ."[51] "[I]f so," the court reasoned, "the cause of action is barred by § 688.008."[52] Comparing the allegations comprising the claim for unfair competition with those comprising the claim for misappropriation of trade secrets, the court concluded that the allegations in the two claims contained no "material distinction."[53] Accordingly, the court dismissed the unfair competition claim as preempted.

This Court finds the reasoning in Allegiance Healthcare Corp. persuasive and adopts it. Consequently, the Defendants' deceptive and unfair trade practices, fraud, and negligent misrepresentation claims will be dismissed if they contain no material distinction from the FUTSA claim. That is to say that if the allegations of trade secret misappropriation *alone* comprise the underlying wrong, only the FUTSA claim will survive the motion to dismiss. The Court must therefore examine the allegations in each claim to see if they are separate and distinct from the FUTSA claim.

---

[50] Id.

[51] Id. at 1336 (quoting Coulter Corp. v. Leinert, 869 F. Supp. 732, 734 (E.D. Mo. 1994) (applying Florida law)).

[52] Id.

[53] Id.

17

The deceptive and unfair trade practices (FDUTPA), fraud, and negligent misrepresentation claims (counts two, five, and six) are premised on nearly identical allegations. A plain reading of these claims shows that each is predicated on allegations that the Plaintiff made certain false representations to induce the Defendants to act to their detriment. More specifically, the Defendants allege that the Plaintiff represented that it was not in the process of developing a similar telematic system, that it was interested in entering into some type of business relationship with MIN, and that it would keep the information regarding the system confidential and would not use the information without permission.[54] These representations induced the Defendants to divulge its information, to conduct further research into the system, and to forego other business relationships relating to the development, funding, or sale of the system.[55]

While these allegations certainly relate to the misappropriation of trade secrets, the Court is convinced, with due regard to the procedural posture of this case, that there are material distinctions between these claims and the FUTSA claim, such that dismissal on the ground of preemption is not presently warranted. Apart from allegations that the Plaintiff acquired the Defendants' trade secrets by misrepresentation, the FDUTPA, fraud, and negligent misrepresentation claims also contain allegations that the Plaintiff intentionally induced the Defendants to abstain from contracting with other business entities with respect to the system. It appears at this stage that these three claims are not entirely dependent upon the FUTSA claim. Accordingly, because these claims are materially

---

[54] Doc. 50, at ¶¶ 56(a)-(e), 87(a)-(d), 89(a) & (f), 94(a)-(d), 96(a) & (f).

[55] Doc. 50, at ¶¶ 56(c) & (f)-(i), 87(c), 89(a)-(f), 94(c), 96(a)-(f).

distinct from the misappropriation of trade secrets claim in count one, they are not preempted.

The Plaintiff also moves to dismiss count three, the breach of oral confidentiality agreement claim, on the basis of FUTSA preemption. The FUTSA preemption provisions in § 688.008(2)(a) expressly except "contractual remedies" from the scope of preemption. Breach of an oral agreement sounds in contract and is therefore excepted from the preemptive effect of FUTSA.

## Conclusion

Accordingly, upon due consideration, it is adjudged that:

(1) the Plaintiff's motion to dismiss (Doc. 51) is GRANTED in part and DENIED in part;

(2) the Defendants' claim for "Breach of Contract Implied in Law/ Quasi Contract" in count four of the amended counterclaim and claim for "Constructive Fraud" in count seven of the amended counterclaim are DISMISSED; and

(3) the Plaintiff's motion is denied in all other respects.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 6th day of May, 2005.

_____
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record