**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

| | | |
|---|---|---|
| AMERICAN HONDA MOTOR CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | CASE NO.: 5:04-CV-12-OC-10GRJ |
| | ) | |
| MOTORCYCLE INFORMATION | ) | |
| NETWORK, INC., et al. | ) | |
| | ) | **Oral Argument Requested (1 Hour)** |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| MOTORCYCLE INFORMATION | ) | |
| NETWORK, INC., | ) | |
| | ) | |
| Counterplaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| AMERICAN HONDA MOTOR CO. INC., | ) | |
| | ) | |
| Counterdefendant. | ) | |
| _____ | ) | |

**AMERICAN HONDA'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION FOR AN AWARD OF REASONABLE**
**ATTORNEYS' FEES AND RELATED NON-TAXABLE EXPENSES**
**AGAINST THE LAW FIRM OF SILVERMAN SANTUCCI LLP**
**AND/OR ITS RESPONSIBLE INDIVIDUAL ATTORNEYS**

"When it becomes apparent that discoverable evidence will not bear out the claim, the

litigant and his attorney have a duty to discontinue their quest." *Avirgan v. Hull*, 932 F.2d

1572, 1582 (11th Cir. 1991), *cert denied*, 502 U.S. 1048 (1992) (citing *Collins v. Walden*,

834 F.2d 961, 965 (11th Cir. 1987)). Silverman Santucci LLP ( "Silverman Santucci"), on

behalf of Defendants Gregory Schweighart ("Schweighart") and Motorcycle Information

Network, Inc. ("MINI"), wilfully filed a frivolous and baseless shotgun-style counterclaim that it stubbornly refused to abandon in the hopes of scaring American Honda Motor Co., Inc. ("American Honda") into paying an extortionate monetary settlement.  The counterclaim was initiated and pursued in bad faith.  Silverman Santucci filed it without any pre-suit investigation of the technical soundness of its claims.  Silverman Santucci never bothered to conduct any investigation of the soundness of the technical premise of its claims during the pendency of the counterclaim.   Silverman Santucci's maintenance of MINI's implausible, illogical, and unverified allegations, in utter disregard of the available facts and controlling law, left American Honda with no alternative but to undertake the burdensome effort of disproving the eight counts of the counterclaim.   The firm's bad faith conduct forced American Honda to engage at great expense two of the foremost experts in the field of vehicle navigation technology to do what Silverman Santucci should have done pre-suit – perform a prior art survey that destroyed the factual basis of any trade secret claim.  Instead of litigating claims that had been vetted by a pre-suit investigation, Silverman Santucci turned federal procedure on its head and forced American Honda to prove a negative – that the counterclaim was baseless.  Even though Silverman Santucci took no depositions, failed to engage any experts and were provided indisputable documentation that refuted a major component of MINI's trade secrets case, the firm dodged and weaved and stubbornly contested the case to a litigated conclusion. Silverman Santucci's shotgun style pleadings, dilatory tactics, and artful shifting of legal theories unreasonably and vexatiously multiplied the proceedings before this Court and caused American Honda unnecessarily to incur significant fees, costs, and expenses to vindicate its technology and to disprove MINI's far-

119020.TMP

fetched allegations.    Moreover, there can be no doubt that pursuit of this case was lawyer driven.  The strategies that Silverman Santucci employed to maximize the nuisance value of the case were influenced by the fact that their clients had no genuine downside from the litigation.  MINI is a shell corporation and Schweighart is judgment proof.  The litigation decisions therefore lacked the normal constraints that moderate the behavior of economically rational litigants.

On April 21, 2006, this Court entered final judgment in favor of American Honda and against MINI on all claims (Doc. 118).[1]  Silverman Santucci cannot simply hide behind the protection of its judgment proof clients, but should instead be sanctioned and held directly and/or jointly liable for American Honda's attorneys' fees, costs, and expenses pursuant to 28 U.S.C. § 1927 and this Court's inherent power over members of its bar.[2]  *See, e.g., Torres v. City of Orlando*, 264 F. Supp. 2d 1046, 1053-55 (M.D. Fla. 2003); *see also Byrne v. Nezhat*, 261 F.3d 1075, 1130-33 (11th Cir. 2001) (wherein Judge Tjoflat recognized that

---

[1] To avoid filing duplicative documents and factual recitations, the majority of American Honda's citations will be to the Court's Docket, American Honda's Appendix in Support of Motion for Summary Judgment (Doc. 83), and Magistrate Judge Gary R. Jones' R&R. (Doc. 106).  Any additional referenced evidence or documents not already before the Court will be directly attached to this Memorandum as Exhibits or sponsored by the accompanying affidavit of Hal K. Litchford.

[2] The circuits are split as to whether sanctions under 28 U.S.C. § 1927 may be assessed against law firms as opposed to only individual attorneys.  The Eleventh Circuit has yet to rule on this issue, but has held that "a court may assess attorney's fees against litigants, counsel, and *law firms* who willfully abuse judicial process by conduct tantamount to bad faith." *Avirgan*, 932 F.2d at 1582 [emphasis added].  To formulate an enforceable Order that will both compensate American Honda for its victimization and deter other practitioners, any award of fees should encompass both the law firm and the responsible individual attorneys.

119020.TMP

"plaintiffs file shotgun complaints and include frivolous claims to extort the settlement of . . . unmeritorious claims.").

## **INTRODUCTION**

American Honda initiated this action as a complaint for declaratory judgment (Doc. 1) in response to a threatening demand letter sent by MINI to American Honda executives in December of 2003.  MINI's demand letter was carbon copied to Silverman Santucci attorney Melvin K. Silverman[3] and included a copy of a 10 page draft complaint that had been prepared by attorneys at Silverman Santucci (Doc. 13 at Exh. A).[4]  Silverman Santucci is a self-described "high-energy patent and intellectual property" firm that "obtains patents, trademarks and copyrights on a global basis" and further "licenses and litigates technology and trade secret issues."[5]  Silverman Santucci, http://www.silvermansantucci.com/index.php (last visited May 5, 2006) (select pages of which are attached hereto as Composite Exhibit

---

[3] Melvin K. Silverman is not licensed to practice law in the state of Florida and has previously been sanctioned for engaging in the unauthorized practice of law in this state. *Vista Designs, Inc. v. Melvin K. Silverman*, 774 so.2d 884 (Fla. 4th DCA 2001).  Mr. Silverman attended Mr. Schweighart's deposition on September 16, 2004 and was further involved in the evaluation of MINI's claims (Doc. 87 at p. 2; p.279, ln.15; and Exh. 19).

[4] An email from Silverman Santucci attorney Philip Duvalsaint dated July 31, 2003 and transmitting the draft complaint to Schweighart was attached to the last page of the draft complaint sent by MINI to American Honda.

[5] According to Silverman Santucci's website, Melvin K. Silverman is a registered patent attorney and holds an electrical engineering degree from Columbia University.  Mr. Silverman is intimately experienced in the field of navigation, having previously worked with NASA to develop inertial guidance components for the lunar missions of the 1970's. He has over thirty (30) years of experience in the areas of intellectual property, with specific technical expertise in the following fields: trade secret practice, software and Internet law, protection of business methods, and intellectual property areas related to bio-physics, medical imaging and information theory. Silverman Santucci, http://www.silverman-santucci.com/aboutus/silverman.htm (last visited May 5, 2006).

119020.TMP

"A").  Silverman Santucci was evaluating MINI's claims sometime prior to July of 2003, the date that it forwarded the draft complaint to Schweighart.

On May 10, 2004, Silverman Santucci filed MINI's counterclaims for theft of trade secrets, breach of confidentiality agreement, fraud, negligent misrepresentation, and deceptive and unfair trade practices (Doc. 19).  As the litigation unfolded, its was revealed that no expert had been engaged pre-suit to evaluate the technical validity of MINI's trade secret claim (Doc. 40 at p.4).   Nor did the firm have any intention of undertaking the expensive burden of investigating or proving the sophisticated claims it alleged against American Honda.  When the time came to disclose experts and serve reports, Silverman Santucci did nothing.  The firm proceeded to dismiss its trade secrets claims, but maintained the remaining counterclaims even though the firm had first hand knowledge that the key non-party witness would not support their modified case. Silverman Santucci disregarded the facts and the law and contested MINI's extensive counterclaim against American Honda in a manner that was intended artificially to inflate the nuisance value of the case to extort the maximum monetary settlement.  This is the essence of bad faith litigation tactics that compels counsel to bear the costs of their misuse and abuse of the federal courts.

## ARGUMENT

I. **Silverman Santucci Intentionally Disregarded The Lack Of Legal Or Factual Support For MINI's Claims**

At the outset, it is readily apparent that MINI's claims were illogical and implausible. If anything, Silverman Santucci had a heightened duty to diligently verify MINI's tenuous intellectual property claims because Schweighart is a credulous and unsophisticated person who has a limited education and no technical background or experience (Doc. 106 at p. 2).

119020.TMP

Additionally, the technical viability of its trade secret claims was susceptible of assessment by a survey of publicly available prior art. So, too, it was not difficult to ascertain whether MINI had reduced its concept to practice or whether it had in its possession a functional prototype or software, as the firm erroneously represented to the Court early in the case (Doc. 18). Silverman Santucci was fully aware that MINI's claims were not supported by the facts or the law, but asserted them nonetheless and contested American Honda's defense of them to the bitter end.

The utter lack of support for MINI's counterclaim is already well documented in the Court's systematic dismantling of its case in the R&R. There have never been any documents or other evidence to support the idea that there was a business relationship between MINI and American Honda, as MINI's interactions with American Honda were brief to non-existent and primarily at public motorcycle events (Doc. 106 at 4). There have also never been any documents or evidence to support MINI's claim that American Honda misappropriated or used MINI's VNSS motorcycle System, as American Honda has never offered a vehicle navigation system for its motorcycles or automobiles that contains all of the components of MINI's VNSS System (Doc. 106 at 13). Finally, as established by American Honda's unrefuted expert declarations, had Silverman Santucci performed even a cursory review of the publicly available prior art the firm would have known that MINI's VNSS System was not novel or unique and has existed both in individual components and as a

119020.TMP

combination many years prior to MINI's limited communications with American Honda.[6] (Doc. 106 at 3; Doc. 83 at Tab 12, 13).

Silverman Santucci holds itself out as a firm specializing in intellectual property matters, specifically touting its representation of clients in intellectual property infringement matters and important trade secret cases. *See* Exhibit "A." The firm cannot deny the crucial importance of the prior art in a case like this in which it must establish uniqueness or novelty as an essential element of a legally protectible intellectual property interest. Given the state of the prior art, as ultimately established by American Honda, Silverman Santucci had an absolute duty to advise against MINI's pursuit of its unprovable trade secret claims against American Honda. With respect to the subordinate counts of the counterclaim into which the case morphed at the very end,[7] the Court ultimately found that there was no basis at all for these claims, even construing the facts most favorably to MINI (Doc. 106 at p. 29, n.126). The record also reveals that Silverman Santucci persisted in pursuing this claim and resisting summary judgment after personally interviewing Kelly Knievel and learning there were no facts to support these secondary claims. See *infra* at Section II, A, p. 14. Silverman

---

[6]  The most compelling evidence of prior art is found within the United States Federal Highway Administration Intelligent Transportation Systems (ITS) reports from 1994 to 1999, which describe functional equivalents to all elements of the MINI VNSS System. Moreover, Japan based Honda Motor Company is one of the pioneers of modern vehicle navigation systems and, in 1997, introduced its Inter Navi System that provided a majority of the functions of MINI's VNSS System (Doc. 83 at Tab 13, pp. 11-13 and 15).

[7] In its Order in May, 2005, the Court characterized these claims as "premised on nearly identical allegations." (Doc. 64 at p. 18). The operative facts were MINI's contention that it was induced by American Honda's representatives "to divulge its information, to conduct further research into the system, and to forego other business relationships relating to the development, funding, or sale of the system." *Id.* In the absence of trade secret allegations and expert witnesses, the sufficiency of these claims depended on MINI's ability to establish that Evel Knievel had made a commitment to provide it $7 million in start up funds.

119020.TMP

Santucci, however, chose willfully to charge ahead anyway with MINI's claim that American Honda entered into a multi-million oral business contract with it to develop a VNSS System after an impromptu twenty minute meeting between American Honda representatives and Schweighart at a motorcycle industry conference.[8] (Doc. 87 at 176-77).

Notwithstanding the prolix and technical claims it asserted against American Honda, Silverman Santucci refrained from conducting any depositions, disclosing any experts, serving any expert reports, or identifying or developing any evidence of any kind to show that MINI's VNSS System was unique or in any way valuable. The only discovery it engaged in was a lukewarm propounding of one set of discovery requests. Despite Silverman Santucci's ongoing duty to abandon a futile quest, American Honda was forced to file its own expert reports late in the case to prod Silverman Santucci into voluntarily dismissing with prejudice its intellectual property claims against American Honda, which eventually occurred less than two weeks prior to the discovery deadline. Worse yet, Silverman Santucci did not entirely abandon MINI's hopeless cause but instead continued to pursue MINI's claims on its secondary theory of lost business opportunity, even though the firm had conducted a personal interview of the critical witness and learned that the facts would not support these causes of action. Silverman Santucci must be held accountable for

---

[8]   Schweighart testified during deposition that he provided no documents and no trade secret information to American Honda at this brief meeting outside of a restroom (Doc. 83 at Tab 11, Answers 19 & 21). Quite apart from the obvious statute of frauds problem, Silverman Santucci could not have reasonably believed that American Honda, or any other reputable company, would enter into a multi-million dollar business commitment on the solicitation of a total stranger, who had no technical background or credentials, without performing any due diligence or documenting the relationship in writing.

119020.TMP

its dogged persistence in the face of no legal or factual support for its clients' claims and the completely avoidable financial harm that was thereby inflicted on American Honda.

## II. American Honda Is Entitled To Recover Its Attorneys' Fees And Related Non-Taxable Expenses From Silverman Santucci Pursuant To 28 U.S.C. § 1927

"[A]ny attorney . . . who so multiples the proceedings in any case unreasonably and vexatiously may be required by the Court to personally satisfy the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927 ("Section 1927").  Section 1927 was created to "deter frivolous litigation and abusive practices by attorneys … and to ensure that those who create unnecessary costs bear them." *O'Rear v. American Family Life Assurance Co. of Columbus, Inc.*, 144 F.R.D. 410, 413 (M.D. Fla. 1992) (quoting *Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989)).  Under Section 1927, a court may assess attorneys' fees against those who willfully abuse the judicial process by conduct tantamount to bad faith.  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 755 (1980); *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991), *cert denied*, 502 U.S. 1048 (1992).

Silverman Santucci conducted this litigation in a manner that was designed to unreasonably and vexatiously multiply the proceedings and to bluff American Honda into a monetary settlement.  Regardless of the merits, Silverman Santucci did all it could to pump up American Honda's exposure and the costs of the litigation.  At the beginning of the litigation, the firm represented to American Honda and this Court, falsely as it turned out, that the case would require extensive deposition practice in highly technical areas, both in the United States and Japan; that MINI would engage no fewer than three experts; and that MINI possessed a functional product including operating software programs and source code (Doc.

119020.TMP

18 at pp. 10-11 and 17).   At the same time, Silverman Santucci dramatically expanded, without any factual basis, the scope of the counterclaim to include navigation systems in American Honda's automobiles.   Silverman Santucci filed a shotgun style counterclaim, engaged in dilatory litigation tactics, artfully skirted the facts and the law, failed to take any action to prosecute MINI's claims, yet stubbornly refused to discontinue this baseless and unsupported strike suit.   Silverman Santucci's initiation and continued prosecution of MINI's claims, which were not "worth prosecuting in the first place" because they lacked any "plausible legal or factual basis," is "unreasonable and vexatious to the judicial process and tantamount to bad faith." *Torres*, 264 F. Supp. 2d at 1053-54.[9]

### A.    Silverman Santucci Filed A Shotgun Style Counterclaim and Pursued It In Bad Faith As A Strike Suit

Silverman Santucci employed classic shotgun pleading tactics in an effort to extort payment for utterly unmeritorious claims.   The shotgun-style counterclaim asserted multiple causes of action that were all difficult to resolve summarily.   In an obvious tactic designed to maximize the nuisance value of its claims, MINI initially postured its trade secret claim as one involving complex technical software and design components (Doc. 18 at pp.10-11).   At the preliminary pretrial conference before this Court, Silverman Santucci expressed a need to take approximately 30 depositions, including an extensive number of depositions in Japan, and further indicated that MINI would be retaining three independent experts, a software expert, design expert, and damages expert (Doc. 18 at pp.11 and 17).   Shortly thereafter, in

---

[9] Nor can Silverman Santucci blame MINI for leaving the firm no choice but to litigate because its client refused to authorize a settlement.   "Counsel did have a choice; he could have withdrawn from representing a client who stubbornly insisted that he pursue frivolous litigation." *Torres*, 264 F.Supp.2d at 1055.

119020.TMP

June, 2004, in a response to early discovery efforts by American Honda, Silverman Santucci implicitly represented that MINI had a functional product, including software, that had been reduced to practice: "it now appears that experts in computer programming and telematics will have to examine the source code and program from all parties in order to determine the amount of similarity between the two programs" (Doc. 28 at p.3).  This position was later exposed as a sham.  Silverman Santucci ultimately had to concede that MINI never reduced its ideas to practice and thus never had a functional product, software or source code (Doc. 83 at Tab 11, Answers 5 and 13).  Silverman Santucci also insidiously broadened the scope of its trade secret allegations beyond motorcycle navigation systems to include American Honda automobile navigation systems (Doc. 19 at ¶¶ 33-35 and 51).  Given the number of automobiles that include a navigation system option, this ploy had the effect of increasing American Honda's theoretical exposure exponentially.

Given the staggering implications of MINI's claims, American Honda immediately served extensive written discovery on MINI that was designed to flush out MINI's case. When MINI was unable to properly articulate its trade secrets, American Honda moved to compel and for sanctions (Docs. 22 and 38).  Boxed in by its inability to support the expansive case it originally announced, Silverman Santucci instead artfully dodged and recast its legal theory.  The reformulated case claimed that MINI's protectible trade secret was really not one that involved complex technical components but rather was a unique "compilation of ideas."  MINI's stipulation was memorialized in this Court's Order dated October 7, 2004 (Doc. 45), as follows:

> [MINI] does not wish to assert specific intellectual property rights over any particular technical information incorporated into any of [American Honda's]

119020.TMP

products.  Rather, they wish to assert property rights over a compilation of
ideas which have allegedly been misappropriated by [American Honda].

This strategic move did more than merely evade the imminent exposure of the non-existent

basis for its case.  There is Florida case law that suggests that the existence of unique ideas

can only be resolved by a fact-finder.  *See All Pro Sports Camp, Inc. v. Walt Disney Co.*, 727

So.2d 363, 368 (Fla. 5th DCA 1999) ("Whether an idea is novel, or not generally known, is a

factual question.")  Thus, this concession also inflated the nuisance value of the case and

thereby facilitated Silverman Santucci's strike suit litigation strategy.

Silverman Santucci would not act even when American Honda disproved its case for

them.  For example, throughout the litigation, Schweighart was obsessed with the notion that

he was the one who gave American Honda the idea for its Ownerlink network.[10]  As set forth

in the accompanying affidavit of Hal K. Litchford, in October, 2004, Silverman Santucci was

provided documentation that conclusively refuted this notion.    Notwithstanding this

evidence, Silverman Santucci did nothing either to pursue or drop this part of the case.  The

firm also did and said nothing in the face of the subsequent deposition testimony of

Schweighart at which he vehemently maintained that "I am the creator of Ownerlink. . ."

Depo. G. Schweighart 2/3/2005 at pp. 508-11.

Silverman Santucci's pattern of bad faith was even more egregious in response to

American Honda's final annihilation of MINI's trade secret case by the submission of the

conclusive expert reports.  The firm had not consulted any technical expert and could not

submit any counter expert reports by its clients' disclosure deadline 30 days later.  Worse, the

---

[10] Ownerlink is a web based network between owners of Honda and Acura automobiles,
dealers and American Honda that enables vehicle and customer specific communications and
the exchange of vehicle related information.

119020.TMP

firm did not engage a damages expert even though, as the Court found in the R&R, expert testimony was a prerequisite for the damages recoverable under the claims that were pled – i.e., lost profits by a start up business or the value of the unique idea (Doc. 106 at p. 29, n.126). Finally checkmated by the expensive results of a prior art investigation the firm should have conducted pre-suit, Silverman Santucci at last entered into a stipulation to dismiss the trade secret claims with prejudice (Doc. 65). Because of the enormous expense that had been inflicted on it, American Honda insisted on inclusion in the stipulated dismissal the right to seek its costs and fees. This stipulation was not finalized and filed until June 21, 2005, nine days short of the discovery cut-off.

Instead of ending the matter, however, Silverman Santucci merely regrouped and persisted in litigating what was left of its case. Until the firm ditched the trade secrets case, Silverman Santucci treated these secondary claims as afterthoughts. Silverman Santucci nevertheless latched on to these claims in a desperate gambit to keep its case alive and to avoid summary judgment in the hope that American Honda still would not risk a trial. Silverman Santucci explicitly rationalized continued litigation of these claims on the ground that no expert testimony was required (Doc. 100 at pp. 14-16). The new theory of recovery was that American Honda lulled and misled MINI to give up a $7million funding commitment from Evel Knievel. The result was the same, although the process was longer.[11] Silverman Santucci refused to back down and American Honda was forced to litigate its eleventh hour feint to the judicial resolution that these claims had no legal or factual support.

---

[11] As part of its end game strategy, Silverman Santucci also filed a bad faith motion to default American Honda on the counterclaim that was possible only because the firm violated Local Rule 3.01(g) by failing to contact opposing counsel in advance (Doc. 66). This motion was summarily denied (Doc. 69).

119020.TMP

There is another troubling and aggravating factor involved in Silverman Santucci's change of direction at the end of the discovery period. The Court is already aware of the convergence of Silverman Santucci's representation of Evel Knievel, the key witness to its new theory of recovery, and Knievel's changed story (Doc. 88). Additionally, the deposition of Kelly Knievel revealed that Silverman Santucci was fully aware by May or June, 2005 that there was no factual support for the non-trade secret claims. Schweighart's dealings with the Knievels were exclusively through Evel's son, Kelly. Even though Evel Knievel would not sit for a deposition, his son did. Kelly Knievel testified repeatedly that he never entered into any agreement to provide $7 million of funding. Depo. K. Knievel 8/26/05 at pp. 32, 35, 36 40, 49. Nor did he enter into any agreement with Schweighart on behalf of his father. *Id.* at pp. 50-51. He further described a meeting in the spring of 2005 with Schweighart's attorney, Mike Santucci. *Id.* at pp. 52-53, 61. Kelly Knievel testified that he told Santucci at that time the very same things about raising money that he had testified to earlier in the deposition. *Id.* at pp. 53. Thus, Silverman Santucci contested American Honda's motion for summary judgment to a litigated conclusion despite first hand knowledge of the complete absence of factual support.

The end result is that all this gamesmanship and maneuvering and refusal to abide their duties as officers of the Court had the effect of significantly multiplying the proceedings in bad faith.

**B.    Silverman Santucci Engaged In Dilatory Litigation Tactics**

Silverman Santucci's dilatory litigation tactics also unreasonably and vexatiously multiplied the proceedings before this Court. The record is replete with Silverman Santucci's

119020.TMP

pattern of delay. The firm filed an enlargement of time for nearly every single filing deadline in this case, including enlargements of time to respond to American Honda's complaint (Doc. 6),[12] first motion to dismiss (Docs. 27 and 34), second motion to dismiss (Doc. 54), and motion for summary judgment (Docs. 91 and 98). Silverman Santucci filed a motion for enlargement of time to object to the R&R. (Doc. 109). Silverman Santucci requested an enlargement of time to respond to American Honda's first set of discovery (Doc. 20), second set of discovery (Doc. 47), and further moved for an enlargement of the discovery completion deadline set by this Court (Doc. 72). If there was a deadline, Silverman Santucci could be counted on to seek an enlargement of it.

Silverman Santucci also went to great lengths to complicate and delay American Honda's efforts to interview and depose third party witnesses. On February 17, 2005, Silverman Santucci attorney Philip Duvalsaint sent counsel for American Honda a letter declaring that a number of these witnesses were agents of MINI and therefore could only be contacted through Silverman Santucci. When counsel tried to schedule the depositions through Mr. Duvalsaint's office, they were informed that American Honda would have to subpoena these so called agents and further that the depositions would have to be coordinated on attorney S. Tracy Long's busy calendar because Mr. Duvalsaint was no longer working on the case. Although many of the depositions were delayed over a month because of Mr. Long's trial schedule, when the depositions finally occurred it was none other than

---

[12] MINI alleged in its supposed *pro se* motion for enlargement of time to respond to American Honda's original complaint that it required an enlargement because it was in the process of locating appropriate counsel. However, Silverman Santucci had already prepared MINI's draft complaint nearly six months earlier and further misleadingly prepared MINI's *pro se* motion that was mailed from Silverman Santucci's office (Docs. 8 and 9).

119020.TMP

Mr. Duvalsaint who appeared alone and by telephone for every single one. A true and correct copy of pertinent correspondence between counsel for American Honda and Silverman Santucci is attached to the affidavit of Hal K. Litchford as Composite Exhibit "K." Notwithstanding Silverman Santucci's representations, Bryon Craig, Steve Curtis, Elsom Eldridge, and Jeff Parsons all emphatically stated that they were in no way an agent or employee of MINI when their depositions were finally taken.[13] Depo. S. Curtis 5/17/05 at p. 24; Depo. E. Eldridge 5/18/05 at pp. 7-8; Depo. B. Craig 5/19/05 at pp. 21-23; Depo. J. Parsons 4/29/05 at p. 7.

MINI and Silverman Santucci's intentionally evasive and circular discovery responses required American Honda to file discovery related motions to compel and for sanctions (Docs. 22 and 38). Furthermore, in MINI's own filings, Silverman Santucci repeatedly refused to comply with this Court's certificate of conference requirement (Docs. 6, 27, 66, and 67), unnecessarily increasing the filings before this Court and resulting in two orders from this Court chastising Silverman Santucci for ignoring its obligations under Local Rule 3.01(g) (Docs. 10 and 30). Finally, Silverman Santucci's unusual decision to represent Evel Knievel and subsequent inability or refusal to coordinate his deposition also resulted in three additional unnecessary delay and discovery related motions (Docs. 68, 96, and 104).

Silverman Santucci's routine pattern of delay and obfuscation unreasonably and vexatiously multiplied the proceedings before this Court. Nearly all of the unnecessary

---

[13] Their client also directly impeded American Honda's discovery. A deponent whom Schweighart passionately insisted would support his story not only unequivocally denied these assertions but also testified that he recently had been contacted by Schweighart and asked not to speak to counsel for American Honda. Depo. W. Robinson 6/13/05 at p. 6, ln. 7 through p. 7, ln. 8; p. 12, lns. 9-15; p. 13, ln. 22 through p. 14, ln. 15.

119020.TMP

motions referenced above required additional responsive pleadings and orders from this Court. American Honda incurred significant fees and costs engaged in this frustrating and avoidable waste of time.

**III.    American Honda Is Entitled To Attorneys' Fees And Related Non-Taxable Expenses Against Silverman Santucci Pursuant To This Court's Inherent Power To Sanction**

The Supreme Court has determined that "the power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax counsel fees against a party who litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial process." *Roadway Express, Inc.*, 447 U.S. at 766 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 257 (1975)). That Silverman Santucci acted in bad faith is simply undeniable. Accordingly, this Court should exercise its inherent powers to impose sanctions on Silverman Santucci. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 47-51 (1991) (a federal court may invoke its inherent power to sanction a party even if the conduct is also sanctionable by statute or rule).

**IV.    American Honda's Expert Witness Fees, Travel Expenses, and Westlaw Charges Are Recoverable From MINI And Silverman Santucci.**

In addition to the conventional attorneys' fees and taxable costs American Honda was forced to incur as a result of MINI and Silverman Santucci's bad faith claims against it, American Honda also incurred expert witness fees and travel expenses. These expenses are also taxable under the Court's inherent power or pursuant to 28 U.S.C. § 1927. *Barnes v. Dalton*, 158 F.3d 1212, 1213-14 (11th Cir. 1998). (expert witness); *Frye v. Pena*, 1997 WL 659817, at *9 (D. Ariz. 1997) (travel expenses). In addition, expenses for computerized research systems such as Westlaw are recoverable as part of attorneys' fees. *LeBlanc-*

119020.TMP

*Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citing *United States ex rel. Evergreen Pipeline Constr. Co v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996). All of these expenses may be included in an assessment against Silverman Santucci.

## CONCLUSION

"When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest." *Avirgan*, 932 F.2d at 1582 (11th Cir. 1991). Sadly, Silverman Santucci's litigation tactics represent the antithesis of federal court practice. Instead of exercising the due diligence and gatekeeping function demanded of federal trial counsel, the firm filed a groundless counterclaim, took no steps to support it, but relentlessly contested American Honda's defensive efforts every step of the way. Silverman Santucci effectively reversed federal procedure and forced American Honda, at unacceptable expense, to demonstrate the total absence of support of its allegations. Had Silverman Santucci discharged their professional responsibility, this case would have ended simply and efficiently with the entry of a declaratory judgment that was not reasonably contestable. The counterclaim never should have been brought and certainly should not have been maintained. The firm's conduct also shamefully buoyed the hopes of their unsophisticated client who, as late as May, 2005, still had the unrealistic expectation that his case was worth in excess of $10 million. Aff. H. K. Litchford, Ex. "L."

Silverman Santucci was aware that there was no evidence that would not bear out MINI's claims well before it began MINI's quest against American Honda. Silverman Santucci's strike suit strategy, shotgun style pleadings, artful shifting of legal theories, and dilatory tactics unreasonably and vexatiously multiplied the proceedings before this Court

119020.TMP

and caused American Honda unnecessarily to incur significant fees, costs, and expenses to defend its technology and to disprove MINI's facially implausible allegations.  Silverman Santucci's sole objective was to inflate the nuisance value of its case as much as possible in order to extort a monetary settlement from American Honda.  The substantive law governing trade secrets and unfair and deceptive trade practices ordinarily would shift the fees and costs that were imposed on American Honda to the non-prevailing parties.  That remedy is hollow in this case.  The litigation was lawyer driven and Silverman Santucci must not be allowed hide behind its judgment proof clients and avoid professional accountability for its actions.  For these reasons, and in the interest of justice, American Honda requests this Court to sanction Silverman Santucci pursuant to 28 U.S.C. § 1927 and this Court's inherent power by requiring Silverman Santucci to pay American Honda its reasonable attorneys' fees, costs, and related non-taxable expenses as established by the accompanying attachments of Hal K. Litchford and Russell W. LaPeer.

Respectfully submitted,

**LITCHFORD & CHRISTOPHER**
Professional Association
Bank of America Center
390 North Orange Avenue
Post Office Box 1549
Orlando, Florida 32802
Telephone: (407) 422-6600
Telecopier: (407) 841-0325

By:  s/ Paul E. DeHart
     Hal K. Litchford
     Florida Bar No.: 272485
     E-mail: hkl@litchris.com
     David G. Lerner
     Florida Bar No.: 961302
     E-mail: dgl@litchris.com

119020.TMP

Paul E. DeHart
Florida Bar No.: 518093
E-mail: ped@litchris.com

Attorneys for American Honda

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 5, 2006, I electronically filed the foregoing Memorandum of Law in Support of its Motion for an Award of its Reasonable Attorneys' Fees and Related Non-Taxable Expenses with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following counsel for Defendants: S. Tracy Long, Esq. (stl@500law.com).

s/ Paul E. DeHart
Hal K. Litchford
David G. Lerner
Paul E. DeHart

20

119020.TMP