UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

AMERICAN HONDA MOTOR CO., INC., a
foreign corporation,

                Plaintiff,

v.                                             Case No.  5:04-cv-12-Oc-10GRJ

MOTORCYCLE INFORMATION NETWORK,
INC., a Florida corporation, GREGORY S.
SCHWEIGHART,

                Defendants.

_____

## REPORT AND RECOMMENDATION[1]

Pending before the Court is American Honda's Motion For An Award Of

Reasonable Attorneys' Fees and Related Non-Taxable Expenses Against Silverman

Santucci LLP And/Or Its Responsible Attorneys. (Doc. 123.) Silverman Santucci LLP

("Silverman") has filed a memorandum in opposition. (Doc. 140.)  On January 16, 2007,

pursuant to prior notice (Doc. 151), the Court conducted a hearing to receive evidence

and to hear argument regarding the legal issues raised by the parties.[2] For the reasons

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[2] After the parties had exhaustively briefed the issues relating to American Honda's request for an award of attorney's fees, the Eleventh Circuit issued its opinion in Amlong & Amlong, P.A. v. Denny's, Inc., 457 F.3d 1180 (11th Cir. 2006) in which the Court stated that an attorney threatened with sanctions under § 1927 is entitled to a hearing. Accordingly, in an abundance of caution before ruling on the request for attorney's fees the Court entered an order providing the parties with an opportunity to request an evidentiary hearing. (Doc. 148.) Silverman advised the Court that an evidentiary hearing would be beneficial (Doc.150) and consequently the Court scheduled an evidentiary hearing for the date suggested by Silverman. Despite the fact that Silverman advised that an evidentiary hearing would be beneficial, Silverman did not present any evidence at the January 16, 2007 hearing, other than the argument of its counsel Tracy Long, and further agreed that American Honda was not required to present the testimony of Russell LaPeer, American Honda's attorney's fee expert, who was present at the hearing. Accordingly, the
(continued...)

discussed below, American Honda's Motion For An Award Of Reasonable Attorney's Fees and Related Non-Taxable Expenses Against Silverman Santucci LLP And/Or Its Responsible Attorneys is due to be **GRANTED** to the extent limited by this report and recommendation.

## I. BACKGROUND AND FACTS

Following a favorable judgment (Doc. 118), American Honda filed its Motion for Attorney's Fees and Related Non-Taxable Expenses against Silverman Santucci LLP ("Silverman") requesting the award of $523,517.26 in attorney's fees, which American Honda alleges it incurred in the defense of the claims brought by Defendants Motorcycle Information Network, Inc. ("MINI") and Gregory Schweighart.[3] American Honda alleges that Silverman's "strike suit strategy, shotgun style pleadings, artful shifting of legal theories, and dilatory tactics unreasonably and vexatiously multiplied the proceedings before this Court and caused American Honda unnecessarily to incur significant fees, costs, and expenses to defend its technology and to disprove MINI's facially implausible allegations." American Honda requests the Court to sanction Silverman pursuant to 28 U.S.C. § 1927 and the Court's inherent power by requiring Silverman to pay American Honda's reasonable attorney's fees, costs and related non-

---

[2](...continued)
record before the Court consists of the briefs filed by the parties, the affidavits of Tracy Long, (Doc. 140, attach #1, Doc. 145, attach #2), the affidavit of Russell W. LaPeer (Doc. 127, attach #2), the affidavit of Hal Litchford (Doc. 127, attach #3) and the affidavit of Paul E. Dehart (Doc. 143).

[3] Schweighart is the principal of MINI and the self-professed inventor of the technology at issue. Doc. 66, Ex. B.

taxable expenses as established by the affidavits of Russell W. LaPeer and Hal K. Litchford and the billing records attached thereto.[4]

Because of the manner in which this case progressed, the Court will analyze American Honda's motion in three phases: (i) the filing of Defendants' counterclaims based upon American Honda's alleged theft or use of Defendants' telematics system for motorcycle riders (the "technology"), (ii) the continued litigation of those claims even after American Honda revealed its independent creation of the technology at issue and, (iii) the prosecution of an alternative theory relating to lost business opportunities, which was revived by Silverman following the dismissal of the theft of trade secret claims.

The case began on January 9, 2004 when American Honda filed a complaint for declaratory judgment in response to a threatening demand letter sent by MINI to American Honda executives in December 2003 alleging that American Honda had stolen and used certain vehicle navigation technology (the "VNSS System") belonging to Schweighart. Notably, attached to the December 2003 demand letter was a copy of a proposed complaint against American Honda.[5] The proposed draft complaint, attached to the December 2003 demand letter, was prepared by Philip A. Duvalsaint, an attorney with Silverman.[6] Silverman originally received the materials relating to the case on March 11, 2003 and evaluated the materials relevant to Defendants' case until about November 17, 2003.  The December 2003 demand letter was sent to American Honda by Schweighart, and although Melvin Silverman is listed as receiving a copy, Silverman

---

[4] Doc. 127 and accompanying exhibits.

[5] Doc. 13, Ex. A)

[6] Doc. 145, Affidavit of S. Tracy Long, ¶ 4.

avers that it did not receive the December 2003 demand letter and did not know the letter had been sent to American Honda until Silverman learned that American Honda had filed a complaint for declaratory relief. [7] Thus, according to Silverman, while an attorney with Silverman prepared and gave the demand letter to Schweighart, the demand letter was sent to American Honda without the authorization of Silverman.

However, after American Honda filed its complaint for declaratory judgment in response to Schweighart's demand letter, Silverman assisted Defendants in locating counsel and then ultimately appeared on behalf of Defendants in the case. It was at this juncture that Silverman directly became involved in litigating the claims in this case against American Honda - which ultimately proved to have little or no merit. In this regard on May 10, 2004 Silverman filed a counterclaim against American Honda on behalf of MINI and Schweighart - substantially similar in form to the draft complaint previously sent to American Honda - alleging claims for theft of trade secrets, breach of confidential relationship, unjust enrichment, negligent misrepresentation, fraud and violation of the Florida Deceptive and Unfair Trade Practices Act.[8] These claims all centered around Schweighart's theory that American Honda had misappropriated or stolen Schweighart's VNNS system when American Honda developed a system called the Ownerlink system. According to Schweighart, he had a series of meetings with American Honda representatives during which he disclosed his concept and system to them, which American Honda then used to develop its own system.

---

[7] *Id.* at ¶¶ 7, 8 & 9.

[8] Doc. 19.

Because of the fact that the claims centered around whether American Honda had developed its system on its own or whether the system was developed based upon the information disclosed to it by Schweighart, there were two avenues of investigating and determining whether American Honda had stolen Schweighart's concept. One avenue was to survey the "prior art" in the industry to ascertain whether the technology was generally known and thus susceptible to creation based upon available information and technology. Although Silverman never engaged an outside expert to review the prior art before bringing the counterclaims the failure to do so may be somewhat understandable considering the fact that throughout the litigation Schweighart had a great deal of difficulty even identifying exactly what technology American Honda allegedly stole from him.

A critical event, however, occurred in the case in October 2004, which should have alerted Silverman to the complete lack of merit to Schweighart's claims and should have caused Silverman to reevaluate whether it should continue to pursue the counterclaims against American Honda based upon the theory that American Honda had stolen the VNNS System that Schweighart alleges he created. In October 2004 following Schweighart's deposition, during a meeting between counsel, counsel for American Honda provided Silverman with "attorney's eyes only" documents evidencing approval by American Honda's upper-level management of American Honda's Ownerlink system, *predating* any contact between Schweighart and American Honda representatives, thus establishing that American Honda had created its system independent of any information Schweighart had provided to American Honda. Eventually, after obtaining approval from American Honda representatives to send the

5

documents to Silverman, copies of these documents evidencing independent derivation of the system by American Honda were transmitted by American Honda's counsel to Silverman in late December 2004 - early January 2005.[9]

Despite the fact that American Honda had presented Silverman with compelling evidence of independent derivation of the telematics system by American Honda Silverman continued vigorously to litigate the counterclaims against American Honda, based upon the premise that American Honda had not independently derived the system but rather had stolen Schweighart's technology. Rather than abandoning these claims Silverman instead filed a First Amended Counterclaim on December 3, 2004, continuing to press the unsubstantiated counterclaims. Eventually, the Court dismissed the counts in the amended counterclaim for breach of contract implied in law/quasi contract and constructive fraud on May 10, 2005[10] and then Defendants finally voluntarily dismissed the claims for theft of trade secrets on June 21, 2005.[11] Even though these counterclaims had been finally eliminated from the case the story does not end there.

Instead, Silverman shifted its attack and proceeded to press the litigation against American Honda, this time based on a new theory. The theory advanced by Silverman on behalf of Schweighart was that American Honda had misled Schweighart into

---

[9] *Id.* at ¶ 25. According to Long, he did not personally review the documents until May of 2005 following which Silverman engaged in a thorough investigation of the documents. *Id.* Silverman recommend to Schweighart to withdraw the trade secrets claims in April 2005 but Schweighart did not agree to do so until early June 2005. *Id.* at 26.

[10] Doc. 64.

[11] Doc. 65.

believing that American Honda would develop Schweighart's technology so that Schweighart would forego brining the telematics system to market, while American Honda finalized the system.

Even ignoring the fact that Schweighart never produced any evidence whatsoever to support this theory, a basic fact that was essential to support this theory, was evidence that Schweighart had an available source of funding that would have been sufficient to bring the concept to market. To establish this essential fact, Silverman advanced the theory that Schweighart gave up a commitment from Evil and/or Kelly Knievel[12] in the sum of $7 million to develop the technology.  As was the case with the claims for theft of trade secrets, this theory was equally as fanciful and there was no evidence to support the claim. This became apparent when American Honda deposed Kelly Knievel, who testified that there was never a commitment with Schweighart for the $7 million in funding. Notably, Kelly Knievel also testified that he had already told Mike Santucci, a partner with Silverman, the same information at an earlier date.

Despite the fact that the counterclaims for "lost business opportunities" had no basis or support Silverman litigated these counterclaims until the final conclusion of this case on October 13, 2005 when the Court issued a report and recommendation, recommending that summary judgment be entered in favor of American Honda. [13]

---

[12] Evil Knievel is the well-known dare-devil, who performed such feats as jumping across canyons and vehicles in a motorcycle.

[13] Doc. 106. As noted in the R&R Defendants failed to submit any experts or any evidence challenging the testimony of American Honda's experts and failed to provide any evidence supporting their claims for damages in the counterclaims.

Silverman argues that this case was client-driven, not lawyer-driven, and that the lawsuit was undertaken in good faith. Silverman maintains that it had no choice but to file the original counterclaim on behalf of Schweighart when faced with American Honda's complaint for declaratory judgment. As for Silverman's conduct in continuing to litigate the counterclaims based upon the theft of Schweighart's technology following disclosure to Silverman of the "independent creation documents," Silverman explains that it could not convince Schweighart to withdraw the claims until the documents were sent by American Honda so that Silverman could thoroughly investigate their effect on the case. Finally, Silverman claims that it would have been improper for it to withdraw the lost business opportunity claims based solely on Kelly Knievel's testimony.

## II.  DISCUSSION

"[T]he district court's authority to issue sanctions for attorney misconduct under § 1927 is either broader than or equally as broad as the district court's authority to issue a sanctions orders under its inherent powers."[14] Therefore, the Court will only consider whether to impose sanctions pursuant to § 1927. If sanctions are appropriate under § 1927, then they will be proper under the court's inherent powers.[15] And, if sanctions are not warranted under § 1927, then they are not properly within the court's inherent powers.[16]

---

[14] Amlong & Amlong v. Denny's Inc., 457 F.3d 1180, 1189 (11th Cir. 2006) (*citing* Cordoba v. Dillard's Inc., 419 F.3d 1169, 1178 n. 6 (11th Cir. 2005).

[15] *Id*.

[16] *Id*. at 1189-90.

8

**A.  Attorney's Fees Pursuant to 28 U.S.C. § 1927**

Section 1927 provides that "[a]ny attorney...who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."[17]

Imposition of these sanctions is within the discretion of the district court.[18] The purpose of section 1927 is to limit the abuse of court processes and discourage dilatory litigation practices.[19] The statute also serves to punish attorneys who engage in improper conduct.[20] Due to its punitive nature, section 1927 must be strictly construed.[21]

Under the plain language of section 1927, three prerequisites must be met before a Court may sanction an attorney for objectionable conduct. First, an attorney must engage in "unreasonable and vexatious" conduct. Second, such "unreasonable and vexatious" conduct must "multiply proceedings." Third, the amount of the sanctions must relate to the excess proceedings caused by the objectionable conduct.[22]

---

[17] 28 U.S.C. § 1927.

[18] Peterson v. BMI Refractories, 124 F.3d 1386, 1390 (11th Cir. 1997).

[19] Roadway Express Inc. v. Piper, 447 U.S. 752, 762-63, 100 S. Ct. 2455, 65 L.Ed. 2d. 488 (1990).

[20] Malautea v. Suzuki Motor Co., Ltd, 987 F.2d 1536, 1544 (11th Cir. 1993); Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir. 1991) (counsel must be found to willfully abuse the judicial process "by conduct tantamount to bad faith").

[21] Monk v. Roadway Express, Inc., 599 F.2d 1378, 1382 (5th Cir. 1979), *aff'd sub nom.*, Roadway Express Inc. v. Piper, 447 U.S. 752, 100 S. Ct. 2455, 65 L.Ed. 2d. 488 (1990).

[22] 28 U.S.C. § 1927; Amlong, 457 F.3d at 1090 (quoting Peterson, 124 F.3d at 1396).

**"Unreasonable and Vexatious" Conduct**

The statute does not define "vexatious."[23] However, in *Amlong & Amlong, P.A. v. Denny's, Inc.* the Eleventh Circuit held that "sanctions under § 1927 are measured against objective standards of conduct."[24]  The Eleventh Circuit has consistently held that an attorney multiplies proceedings  "unreasonably and vexatiously" only when the attorney's conduct is so egregious that it is "tantamount to bad faith."[25] To evaluate such conduct, "court[s] must compare the attorney's conduct against the conduct of a "reasonable" attorney and make a judgment about whether the conduct was acceptable according to some objective standard."[26] Thus, a court may impose sanctions in this circuit even if the attorney acted without a specific purpose or intent.[27]

Courts have found conduct rising to the level of "unreasonable and vexatious" in two scenarios relevant to the instant motion. The first type of scenario concerns an attorney's failure to conduct any pre-suit investigation to establish the basis for the claim. This analysis is relevant to the filing of the counterclaims by Silverman, which proved to have no merit.

---

[23] Jerelds v. City of Orlando, 194 F. Supp. 2d 1305, 1311 n. 9 (M.D. Fla. 2002) (finding that the court must give the word "vexatious" its ordinary meaning and defining it as "lacking justification and intended to harass" or "without reasonable or probable cause or excuse.").

[24] 457 F.3d at1191.

[25] *Id.* at 1190.

[26]  *Id.*

[27] *Id.* at 1192.

*Torres v. City of Orlando*[28] is particularly instructive on this issue. In *Torres*, Judge Presnell found the attorney's conduct there tantamount to bad faith because the attorney had "intentionally-although perhaps without malice-filed and prosecuted claims that lacked any plausible legal or factual support."[29] The attorney in *Torres* failed to conduct a reasonable inquiry into the pretextual reasons for the plaintiff's termination in a discrimination case and instead relied primarily upon the plaintiff's belief that she was "treated wrongly" in going forward with the lawsuit.[30] The court pointed out that the plaintiff's good faith belief that she was treated wrongly did not make counsel's claim meritorious. As Judge Presnell concluded - prosecuting a case that is not "worth prosecuting in the first place" is "unreasonable and vexatious to the judicial process and tantamount to bad faith."[31]

In this case, it is at least arguable whether Silverman had a reasonable basis to pursue this litigation from the start. However, while Silverman's decision to represent Schweighart might have been careless there is no evidence that Silverman's conduct caused American Honda to initiate this action and there is no evidence that Silverman intentionally or recklessly filed the original counterclaim.

With regard to the conduct that prompted American Honda to file this action, while Mr. Duvalsaint of Silverman prepared the draft of the complaint that was attached to the December 2003 demand letter sent by Schweighart, there is no evidence that

---

[28] 264 F.Supp.2d 1046, 1053 (M.D. Fla. 2003).

[29] *Id.* at 1053.

[30] *Id.* at 1054.

[31] *Id.* at 1055.

Duvalsaint or anyone from Silverman authorized Schweighart to attach the draft of the complaint to the demand letter.  Although there is no question that Schwieghart's demand letter with the draft of the proposed complaint prompted American Honda to file the complaint for declaratory judgment, Silverman's pre-suit conduct - and lack of investigation - did not cause the initiation of the proceedings and thus Silverman should not be held responsible for the attorney's fees incurred by American Honda from the filing of the action through May 2004, when Silverman filed the counterclaims based upon the theory that American Honda had stolen Schweighart's technology.

Turning to the filing of the counterclaims, there is little dispute that Silverman did not conduct much, if any, investigation. Apparently, the only "expert" that reviewed Schweighart's "trade secrets" prior to filing the counterclaims was Melvin Silverman, a registered patent attorney with the Silverman firm.[32]  However, notwithstanding whether or not a review of the prior art was conducted by Silverman, the critical information that would establish whether the American Honda system was independently derived would be located in the files of American Honda, and not within the general realm of prior art. Consequently, Silverman could not have determined before the counterclaims were filed in May 2004 whether American Honda had independently derived the system. Accordingly, the Court concludes that Silverman should not be held accountable for the attorney's fees and costs incurred by American Honda commencing with the date Silverman filed the counterclaims.

---

[32] Mr. Silverman is not licensed to practice law in the State of Florida.

Silverman's conduct, however, crossed the line in October 2004 when it continued to vigorously prosecute the counterclaims for theft of Schweighart's technology after American Honda provided Silverman with information establishing that American Honda had initiated its Ownerlink system well *before* the first contact between Schweighart and sales representatives of American Honda. At that point, continuing with the prosecution of these claims - knowing full well that American Honda had unrefuted evidence of independent derivation - unreasonably and vexatiously multiplied these proceedings.

The Eleventh Circuit has recognized that an award of sanctions under §1927 is appropriate when an attorney fails to abandon a claim and instead goes forward knowing that the evidence will not support the claim. For example, in *Avirgan v. Hall*[33] the Court found that the trial court properly sanctioned an attorney who failed to abandon a case when discovery made it clear that there were no viable claims alleged in the complaint. The court stated that while a litigant proceeding in good faith has the right to engage in discovery to prove the existence of a claim, "[w]hen it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest."[34]

The situation, here, is very similar. Silverman should have discontinued the prosecution of the theft of technology counterclaims when it became apparent that American Honda's system had been independently derived and had not been created

---

[33] 932 F.2d 1572, 1582 (11th Cir. 1991).

[34] *Id.* at 1582.

13

based upon the technology that Silverman's client professed had been stolen. While Silverman complains that they were only shown but not given the confidential documents by American Honda in October - and that they did not review the documents until months after the documents were transmitted to them in December 2004 - the fact remains that Silverman did not take any action in the case suggesting that they were intending to abandon the claims and instead continued to press forward vigorously with the counterclaims for the apparent purpose of continuing to pressure American Honda. By failing to discontinue pressing these claims - which had absolutely no merit - Silverman forced American Honda to continue to incur substantial attorney's fees and expenses in defending against the counterclaims. The bottom line is that Silverman unreasonably and vexatiously delayed the inevitable defeat of these counterclaims far too long.

Indeed, once the documents from American Honda were received, a reasonable attorney would have investigated the claims, convinced their clients to abandon the claims and would have withdrawn the claims promptly.[35] Instead, Silverman waited until June 21, 2005 before voluntarily dismissing its counterclaims, which was more than nine months after American Honda had disclosed information establishing independent derivation and more than six months after Silverman received copies of the documents from American Honda.[36]

_____

[35] In fact, once S. Tracy Long reviewed the documents (after the documents had been sitting on the desk of another lawyer since December 2004-January 2005) it took the firm less than two months to voluntarily dismiss those claims.

[36] Although S. Tracy Long represents that the documents were not actually reviewed by *him* until May of 2005, it is not disputed that the documents were sent to and received by Silverman in early January of 2005, although apparently the documents were located in the office of an attorney, other than Mr. Long. Because the request for sanctions is against the Silverman firm, and not Mr. Long individually, it

(continued...)

**"Multiply Proceedings"**

In addition to establishing that an attorney's conduct was "unreasonable and vexatious" in order to be entitled to sanctions under §1927 a court must find that the attorney's conduct had a manifold effect on court processes.[37] Multiplication of proceedings may include abuse of discovery tactics, reassertion of meritless claims and any other conduct resulting in the lengthening of trial proceedings.[38]

As discussed above, the continued vigorous prosecution of the counterclaims by Silverman, knowing full well that the claims failed because discovery showed that American Honda had initiated its system long before Schweighart was ever on the scene, resulted in the unnecessary multiplication of the proceedings in this case. American Honda was forced to initiate and conduct discovery, retain experts and file a motion for summary judgment, none of which would have been required but for Silverman's continued prosecution of the spurious counterclaims.

In addition to the continued prosecution of the counterclaims based upon theft of Schweighart's technology until the claims were voluntarily dismissed, Silverman also continued to multiply the proceedings through unreasonable and vexatious conduct by going forward with the amended counterclaims premised on the fanciful theory that American Honda's conduct caused Schweighart to incur the "loss of business opportunities." A review of the docket reveals that after the lost business opportunity

---

[36](...continued)
is irrelevant whether the documents were received by Mr. Long or another lawyer in the firm. The fact remains that it was Silverman's responsibility to ensure that the lawyers in the firm did not continue to prosecute the counterclaims, while the firm was in receipt of documents negating the validity of the counterclaims.

[37] Peterson, 124 F.3d at 1396-97.

[38] Browning v. Kramer, 931 F.2d 340, 345 (5th Cir. 1991).

counterclaim was injected in the case in December 2004 - and after Silverman persisted in proceeding with this claim even after the other claims were voluntarily dismissed - the prosecution of this counterclaim kept the case from reaching a final conclusion and resulted in the filing of a number of motions by American Honda, caused American Honda to have to engage in expensive discovery, including the taking of depositions and then ultimately caused American Honda to incur the significant expense of having to file a motion for summary judgment to dispose of the claim.

As underscored by the fact that there was no evidence whatsoever produced by Schweighart establishing that he had or would have a substantial funding commitment from Evil Knievel (or anyone else), there was never any basis for Schwieghart's claim in the first place and certainly no basis to continue to prosecute the counterclaim. In short, Silverman's actions in bringing this counterclaim and then continuing to prosecute it without any factual basis to support it, constitutes bad faith and is the quintessential type of conduct §1927 is designed to deter.

### B.  Calculation of Attorneys's Fee Award

The Eleventh Circuit has adopted the lodestar method for calculating a reasonable attorney's fee.[39] To establish a lodestar amount, the court must ascertain a reasonable hourly rate and then multiply that figure by the number of hours an attorney reasonably expended on the litigation.[40] The party requesting the fees bears the burden of documenting the reasonable hours expended and the reasonable hourly rates.[41]

---

[39] Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292 (11th Cir. 1988).

[40] Id. at 1299-1302.

[41] ACLU of Georgia v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999).

American Honda has filed two affidavits and accompanying billing records which substantiate its claims for attorney's fees.[42] Despite the fact that the Court scheduled an evidentiary hearing to provide Silverman with an opportunity to present evidence and expert testimony, if necessary, Silverman chose not to present any evidence, expert or otherwise, challenging the hourly rate or the services rendered by American Honda's attorneys. In addition to the fact that Silverman did not present any evidence challenging the amount of the requested fees, Silverman advised the Court at the hearing that it was unnecessary for American Honda to present the testimony of Russell LaPeer, American Honda's expert on the amount of attorney's fees, and that instead the Court could rely upon Mr. LaPeer's affidavit.  Accordingly, other than general objections raised in Silverman's memorandum in opposition,[43] the Court concludes that the hourly rates reflected on the invoices submitted by American Honda for the attorneys who worked on this case, represent reasonable and acceptable hourly rates and the time billed by the attorneys for the services rendered in this case are also reasonable and were necessarily incurred to bring this case to final judgment.

Notwithstanding Silverman's failure to highlight any time entries that are excessive, the Court on its own thoroughly examined the invoices and time entries filed by American Honda. As part of the calculation of attorney's fees to be awarded the Court has excluded attorney's fees incurred by American Honda before December 3,

---

[42] Doc. 127, Attachment #1, Affidavit of Russel W. LaPeer; Attachment #2, Affidavit of Hal K. Litchford As To Attorneys' Fees And Additional Litigation Expenses; Exhibits A-2, A-3, A-4 and A-5.

[43] In its memorandum in opposition Silverman generally complained that the time entries included time spent in attorney conferences and that the "amount of resources [American Honda] brought to bear to deal with this action was plainly excessive." Doc. 140, p. 18. However, Silverman has failed to draw the Court's attention to even one invoice or time entry which is "plainly excessive" and despite the Court having granted Silverman every opportunity to make a record and present evidence, Silverman has failed to present any evidence or argument pointing to any time entry that is excessive.

2004 - the date the First Amended Counterclaim was filed.  These fees were excluded for the reasons discussed previously and because by that date Silverman should have terminated prosecution of the counterclaims based upon the claim that American Honda had stolen Defendants' technology and should not have injected the meritless counterclaim premised on Defendants' lost business opportunity. Therefore, because from this date forward, the conduct of Silverman was unreasonable and vexatious and served only to multiply the proceedings, the Court has used this date as the starting point for calculating the amount of attorney's fees to be awarded.

### Reasonable Hourly Rates

In calculating a lodestar amount, the Court must first determine whether the hourly rates sought are reasonable."A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."[44] "The fee applicant's customary billing rate for his hourly fee-paying clients 'ordinarily is the best evidence of his market rate.'"[45] The Court is itself considered an expert and can make an informed judgment as to the proper award of fees even without the benefit of outside testimony.[46] The most important factor to consider is the result obtained.[47]

---

[44] Norman, 836 F.2d at 1299.

[45] U.S. ex rel. Educational Career Development, Inc. v. Central Florida Regional Workforce Development Board, Inc., 2007 WL 1601747, *5 (M.D. Fla. June 1, 2007) (quoting Lambert v. Fulton Co., 151 F.Supp.2d 1364, 1373 (N.D. Ga. 2000)).

[46] Id. at 1303; Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994).

[47] Hensley v. Eckerhart, 461 U.S. 424, 435-37 (1983).

Throughout this litigation, American Honda was represented by the firm of Litchford & Christopher Professional Association. Partners Donald E. Christopher,[48] Hal K. Litchford,[49] David G. Lerner,[50] and Associates Paul R. DeHart,[51] Hutch K. Hicken,[52] Jason W. Hill,[53] Christine M. Ho[54] and Richard C. Swank[55] provided the representation for the firm, assisted by paralegals Natalie D. Buckner, Keith M. Latek, Cynthia M. Marsh and Mark K. McCulloch. American Honda seeks an award of fees at an hourly

---

[48] Christopher was admitted to the Virginia Bar in 1977 and to the Florida Bar in 1978. He is rated AV by Martindale-Hubbel and graduated from University of Virginia in 1977. His hourly rate during the instant case was $195 which increased to $325 in June of 2005. He has extensive experience as a trial attorney, including working as an Assistant US Attorney, as a Special Assistant US Attorney, and as a faculty member for Kessler-Eldson Trial Techniques Program. Doc. 127, Errata B.

[49] Litchford was admitted to the District of Columbia Bar in 1978 and to the Florida Bar in 1980. He is rated AV by Martindale-Hubbel and graduated from University of Virginia in 1978. His hourly rate during the instant case was $275 which increased to $325 in June of 2005. He has practiced extensively in antitrust, business and intellectual property law. *Id.*

[50] Lerner was admitted to the Texas Bar in 1985 and to the Florida Bar in 1978. He graduated from Wake Forest University in 1985 and served as the Notes and Comments Editor on the Law Review. His hourly rate during the instant case was $215 which increased to $250 in June of 2005. His primary practices of law include business and commercial litigation, employment law and public accommodations law. *Id.*

[51] DeHart graduated from the University of Florida College of Law *with honors* in 2001 and was admitted to the Florida Bar in 2001. His hourly rate during the instant case was $100 which increased to $150 in June of 2005. He practices commercial litigation, intellectual property law and association law. *Id.*

[52] Hicken graduated from William & Mary School of Law in 2005 and was admitted to the Florida Bar in 2005. His hourly rate during the instant case was $100 per hour. *Id.*

[53] Hill graduated from William & Mary School of Law in 2004 and was admitted to the Florida Bar in 2004. His hourly rate during the instant case was $115 per hour. *Id.*

[54] Ho graduated from William & Mary School of Law in 2004 and was admitted to the Florida Bar in 2004. Her hourly rate during the instant case was $115 per hour. *Id.*

[55] Swank graduated from Florida State University, *magna cum laude* in 1999. He served as the Articles Editor of the Law Review and was admitted to the Florida Bar in 1999. His hourly rate for the case was $190 per hour. His practice areas include litigation, intellectual property and appellate work. *Id.*

rate ranging from $195-325 for partners, $100-190 for associates, and $85 for paralegals.[56]

As evidenced by the affidavit of Russel W. LaPeer - the attorney retained by Litchford & Christopher to review the litigation fees in the case - the rates of the individual attorneys are "well within the customary and acceptable range - i.e., the market rates - of professional fees for attorneys in the Middle District of Florida, who litigate cases of the gravity and magnitude of the present one, in federal court, and possess their respective experience and skill levels."[57] Furthermore, the rates requested in this case are the actual hourly rates billed to and paid by American Honda in this case.[58]

Based upon this unrefuted evidence and the Court's own experience and familiarity with the prevailing hourly rates charged in the Middle District,[59] and the fact that American Honda prevailed in the case, the Court concludes that the partner and associate rates charged by Litchford & Christopher to American Honda, as reflected in the billing records, are reasonable and appropriate. Accordingly, for purposes of arriving at the lodestar the Court will use the hourly rates reflected on the billing invoices for the attorneys and paralegals who rendered services in this case.

---

[56] Litchford Aff. at ¶ 4.

[57] *Id*. at ¶ 13.

[58] *Id*. at ¶ 4.

[59] Litchford & Christopher's rates fall well below the average for attorney and paralegal rates in the Middle District of Florida. A rate ranging from $280-325 per hour for an attorney with more than 25 years experience is reasonable and consistent with prevailing market rates in this district. U.S. ex rel. Educational Career Development, Inc., 2007 WL 1601747 at *5. A rate ranging from $150 to $225 for associate attorneys and a rate ranging from $75 to $125 for paralegals were found to be reasonable for this district. Steffen v. Senterfitt, 2007 WL 1601750, *2-3 (M.D. Fla June 1, 2007).

**Hours Reasonably Expended**

The Court is also required to ascertain the reasonableness of the hours expended by American Honda's counsel. A fee applicant must set out the general subject mater of the time expended by the attorney "with sufficient particularity so that the court can assess the time claimed for each activity."[60] In ascertaining the number of reasonable hours, a court must deduct the "excessive redundant or otherwise unnecessary hours" from those claimed.[61]

In support of its motion, American Honda has submitted itemized billing records. Those records reflect that the partners expended 446 hours, the associates expended 1,288.35 hours and the paralegals expended 142.51 hours in litigating this action for the period from December 6, 2004 through February 17, 2006.[62]

The Court is well aware that when awarding sanctions against a law firm pursuant to §1927, the Court must make sure that the amount of the sanction is a carefully measured response to the sanctioned conduct[63] and should include only those fees and excess costs incurred by an attorney's vexatious behavior and consequent multiplication of proceedings.[64] Silverman's vexatious behavior caused the unnecessary continuation and prosecution of this case when the case should have been abandoned.

---

[60] Norman, 836 F.2d at 103.

[61] Id. at 1301.

[62] At the hearing counsel for American Honda advised the Court that for purposes of bringing this matter to a conclusion counsel did not intend to submit any supplemental invoices for the time expended in preparing for and attending the hearing or for any time after February 17, 2006.

[63] Kapco Mfg. Co., Inc. v. C&O Enterprises, Inc., 886 F.2d 1485, 1496 (7th Cir. 1989).

[64] Monk, 599 F.2d at 1382.

Therefore, the Court concludes that the attorney's fees and costs incurred by American Honda from December 3, 2004 through February 17, 2006 are reasonable and deserving as a sanction pursuant to § 1927.

**Lodestar Amount**

Multiplying the hourly rates charged by attorneys and paralegals, who worked on this case, by the number of hours expended for the time period from December 3, 2004 through February 17, 2006[65] results in a total for attorney's fees of $272,501.75 and a total of $12,113.50 for paralegal fees, for a total sum of $284,505.25.[66]

From this total the Court concludes that it is appropriate to deduct the sum of $13,841.00, an amount American Honda represents it was charged "in connection with special case administration requirements that American Honda imposed" because these fees were not uniquely or peculiarly connected to the instant case.[67] Accordingly, the Court concludes that American Honda is entitled to an award of fees against Silverman for services performed by attorneys and paralegals in the total sum of $270,664.25.

**C. Expert Fees, Costs and Litigation Expenses**

Section 1927 also permits the award of costs and expenses incurred because of the attorney's misconduct.[68] American Honda has submitted documentation of expenses in the amount of $9,600 charged by Peter H. Dana, Ph.D. and $42,284.76

---

[65] Doc. 127, Exhibits A-3, A-4 and A-5.

[66] Doc. 127, Exhibits A-3, A-4 and A-5.

[67] LaPeer Aff. at ¶ 11n.

[68] 28 U.S.C. § 1927.

charged by Robert French, both of whom were retained experts in this case.[69] American

Honda also paid for travel costs in connection with depositions of witnesses identified in

Defendants' counterclaim and to attend a hearing in Ocala. American Honda filed a

schedule of costs from April 29, 2005 through September 14, 2005 totaling $5,342.66

for travel costs.[70] Finally, American Honda reimbursed Litchford & Christopher for costs

incurred by their attorneys for electronic research in the amount of $3,606.89.[71]

Accordingly, in addition to the award of fees, American Honda is also entitled to

an award for costs and expenses in the total sum of $60,834.31.

## III.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that American

Honda's Motion For An Award Of Reasonable Attorney's Fees and Related Non-

Taxable Expenses Against Silverman Santucci LLP And/Or Its Responsible Attorneys

(Docs. 123) should be **GRANTED** as detailed in this report and recommendation and

that American Honda should be awarded the sum of **$270,664.25** for fees and

---

[69] American Honda submitted the reports of Dr. Dana and Mr. French, both technical experts in the field of telematics, in defense of Defendants' intellectual property-related counterclaims. Litchford Aff. at ¶ 9. Both experts were retained by American Honda well after December 3, 2004, the date in which the Court determined that substantial evidence required Silverman to abandon the case. Doc. 127, Exhibits C and D.

[70] *Id*. at Exhibit E.

[71] The Court adjusted the total amount requested for electronic research to reflect only the portion of the case where Silverman's bad faith conduct created excessive litigation - from December 3, 2004 forward.  *Id*. at Exhibit F.

**$60,834.31** for costs and expenses for a total sum of **$331,498.56** pursuant to 28

U.S.C. § 1927 as sanctions against Silverman Santucci, LLP. [72]

 **IN CHAMBERS** in Ocala, Florida, on September 17, 2007.

_Gary R. Jones_
_____

GARY R. JONES
United States Magistrate Judge

Copies to:
  The Honorable Wm. Terrell Hodges
  Senior United States District Judge

  Counsel of Record

---

[72] Because the Court has considered and accepted the affidavit of Tracy Long and the revised affidavit of Tracy Long (Doc. 145, attach. #1), filed in response to American Honda's Motion To Strike Silverman's Memorandum in Opposition, in ruling upon American Honda's request for fees and expenses - and because the Court finds that the arguments in support of American Honda's motion to strike are not persuasive - American Honda Motor Co., Inc.'s Motion To Strike Portions of (1) Silverman Santucci LLP's Memorandum In Opposition To American Honda's Motion For Attorney's Fees And Related Non-Taxable Expenses And (2) The Affidavit of S. Tracy Long (Doc. 141) is due to be **DENIED**.